**NAPIER v. BOSSARD.**

**No. 135.**

Circuit Court of Appeals, Second Circuit.

March 6, 1939.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and William S. Perlman, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for appellant.

Louis Rothbard, of Brooklyn, N. Y. (Francis J. Hughes, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an action to recover for the death of the plaintiff's wife who, while walking on the side-walk, was struck by a taxicab driven by one, Ragone. Her husband sued both Ragone and the appellant, Bossard, and the jury found both liable: Bossard alone appealed. Ragone's cab collided with a Post-Office truck, driven by Bossard, approaching from Ragone's right along another street; the rear of the cab was thrown off to the left, and slewed over onto the side-walk, where it struck the deceased. The action was brought on the theory that both drivers were at fault, and the chief question upon the appeal is whether there was enough evidence to hold Bossard. The cause was brought in the state court, and removed under § 76 of Title 28 U.S.Code, 28 U.S.C.A. § 76, because Bossard was driving the truck "under or by authority of" the postmaster of Brooklyn, who was an "officer * * * acting by authority of" a "revenue law". United States v. Bromley, 12 How. 88, 96, 97, 13 L.Ed. 905; Ward v. Congress Construction Co., 7 Cir., 99 F. 598; Warner v. Fowler, Fed.Cas. 17,182; West v. Prudential Ins. Co., D.C.W.D.Mo., 34 F.2d 449. Before removal the plaintiff took the deposition of Ragone, as a party defendant, under § 288 of the N.Y.Civil Practice Act.

The accident happened at about 5:30 P. M. on January 14th, and it was dark. East 17th Street in the Borough of Brooklyn runs north and south: Avenue J crosses it at right angles. Omitting Ragone's deposition, the testimony was as follows. Ragone, with four fares in his car, was coming north on 17th Street at about 35 miles an hour: Bossard was driving his truck west on Avenue J towards 17th Street, at about eighteen miles an hour. When about 50 feet from the east curb of 17th Street he looked to his left, but did not see the cab; he could then see about 125 feet down 17th Street. He did not look

again till he got to the east curb of 17th. Street, and then he saw the cab, 50 feet south of the south curb of Avenue J, and about 70 feet from the place of collision: he reduced his speed to twelve miles but kept on. Ragone also kept on with some increase in speed, swung to his left, then to his right, and almost succeeded in crossing in front of the truck; but not quite, for his right rear fender was struck by the right end of the truck's bumper which twisted the rear of the cab over upon the side-walk. Upon these facts we think that Bossard's right of way under subd. 4 of § 82 of the N. Y.Vehicle and Traffic Law, Consol.Laws, c. 71, was decisive. The Court of Appeals has several times declared that although this statute does not establish a positive duty on the privileged car to keep on—like the crossing rule at sea—and although its driver must be governed by the relative positions, directions and speeds of the two cars, nevertheless the right of way "will establish precedence when rights might otherwise be balanced". Ward v. Clark, 232 N.Y. 195, 198, 133 N.E. 443, 444. Again: "If the two vehicles are so near the intersecting point that there is a chance of collision if both keep on at the same speed, then the statute says the vehicle approaching from the right may take precedence". Shuman v. Hall, 246 N.Y. 51, 55, 158 N.E. 16, 17; Shirley v. Larkin Co., 239 N.Y. 94, 97, 145 N.E. 751, declares the same doctrine, but in terms of the duty of the burdened car. See also Metzger v. Cushman's Sons, Inc., 243 N.Y. 118, 152 N.E. 695, and Webber v. Graves, 234 App. Div. 579, 255 N.Y.S. 726. It is inherent in any right of way that the privileged party may under some circumstances hold on, for otherwise no privilege would exist, and the phrase would be meaningless: the only question is when he must yield, and the decisions leave that point very largely open. In the case at bar, Ragone's fault is too clear for discussion, but we think that the jury could not properly have held Bossard. Even assuming that he could, and should, have seen Ragone when he first looked, we can see no reason why he should then have checked, there being no apparent danger of collision. At most the jury might have charged him with notice of Ragone's approach at the same speed till he was within 50 feet of the south curb of Avenue J. Even if they had, it did not put him on notice that Ragone would try to cross in front of him. That was a wild and unexpected movement, which he would not have been at fault for failing to impute to Ragone. He might assume that Ragone would do his duty and cross behind him; indeed, if Bossard was at fault at all, it was for checking his speed.

Ragone's deposition substantially changed these facts, and if it was incompetent, the judgment could not stand, even though we are wrong in what we have just said, and though the jury might have found for the plaintiff without it. He just reversed the speeds given by Bossard, attributing to Bossard 35 miles, and to himself, 18 or 20. We think the deposition incompetent. The only time that the point has arisen in the state courts, it was so held (Nixon v. Beacon Transportation Corp., 239 App.Div. 830, 264 N.Y.S. 114), and this seems to us right on principle. Section 304 of the N.Y. Civil Practice Act provides that "a deposition taken within the state, except that of a party, taken at the instance of an adverse party * * * shall not be read in evidence * * * unless it appears to the satisfaction of the court that the deponent is then dead or is out of the state." Literally it is true that Ragone's deposition was "that of a party taken at the instance of an adverse party", but plainly it was not competent against Bossard as an admission; and, if competent at all, it was as testimony, for Ragone was not a party to the controversy in which it was used—the plaintiff's suit against Bossard. The proceeding under § 288 supplies the place both of discovery, and of a commission de bene esse; and, though the absence of the witness is not a condition upon the first, it is upon the other. Discovery was only to obtain the admissions of a party, and admissions are competent, not as testimony at all, but because they are inconsistent with the position taken by the party who made them (Wigmore § 1048) or—what is in substance the same thing—because they are concessions, which remove the admitted facts from dispute. Their truth is therefore not material, and it is ordinarily of no moment whether the judge or jury sees the party who makes them, for they have not to appraise his credibility. When, therefore, it is proposed to use admissions as testimony in a dispute between others, they are wholly perverted, for the party against whom they are used, is deprived of the advantage of having the witness before the jury. It is of course true that he may himself subpoena the deponent for cross-examination, if he is available, but so could a party

against whom a deposition de bene esse is used, in like circumstances. That power has, however, never been deemed sufficient reason to allow the deposition to be read, or to impose upon the other side the duty of producing the witness for cross-examination, if he wanted the jury to see him. The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand. There is not the slightest justification for dispensing with this requirement when the witness is a party to an entirely separate controversy, merely because the two suits can be tried together. To interpret § 304 otherwise is not to help the reform of procedure, but to introduce an irrational and unfair exception, until depositions become competent regardless of the accessibility of the deponents at trial.

Judgment reversed: new trial ordered.